(953 P.2d 229)
No. 78,157

IN THE INTEREST OF K.W., a Child in Need of Care.

Opinion filed January 23, 1998.

*Stacy R. Heinitz*, assistant county attorney, and *Julie McKenna*, county attorney, for appellant.

*Karen Black*, of Salina, for appellees natural mother and natural father.

Before PIERRON, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: This is an appeal by the State from the trial court's judgment dispensing with an adjudication hearing. On appeal, the State contends that the trial court was required to conduct an adjudication hearing before returning the child to the custody of his parents. We agree and reverse.

K.W. was born in January 1996. K.W.'s parents took him to the hospital on March 24, 1996, because he had been vomiting all day and had become limp and unresponsive. J.W., K.W.'s natural father, admitted shaking K.W. when he was unresponsive to try and "arouse him." K.W.'s doctor stated that K.W. had sustained an inflicted brain injury consistent with shaken baby syndrome and would likely survive, but in a vegetative state.

The State filed a child in need of care (CINC) petition on April 10, 1996. The trial court granted an ex parte order for protective custody the same day and placed K.W. in the protective custody of the Secretary of the Department of Social and Rehabilitation Services (SRS). On April 12, 1996, the trial court granted SRS temporary custody.

On May 22, 1996, the trial court learned that criminal charges had been filed against J.W. for causing his son's injuries and, consequently, prohibited J.W. from visiting K.W. J.W.'s preliminary

examination in the criminal case was held in July 1996. Because the trial court determined that the evidence was insufficient to bind J.W. over as the person responsible for causing the injury to K.W., the trial court dismissed the criminal charge against him.

Although the State requested an adjudication hearing for K.W., the trial court never conducted a hearing. In September 1996, the trial court returned custody of K.W. to his parents. In so doing, the trial judge referred to the expert testimony that he had heard at J.W.'s preliminary hearing. The trial court further pointed out that no new criminal charges were pending against J.W. and that K.W. was the responsibility of his parents.

K.W. died on August 17, 1997. After K.W.'s death, J.W. moved to dismiss this appeal for mootness. Although the subject of this appeal has died, we must determine whether the trial court failed to follow correct statutory procedures under the Kansas Code for Care of Children (KCCC) when a CINC petition has been filed. If the trial court erred in failing to conduct an adjudication hearing, this appeal is not moot, because such an error is capable of being repeated. See *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996).

This issue requires the court to interpret the KCCC statute. Therefore, our standard of review is de novo, not abuse of discretion as suggested by both the State and J.W. "Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *State v. Arculeo*, 261 Kan. 286, Syl. ¶ 1, 933 P.2d 122 (1997). Also, under the rules of appellate statutory construction, "several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire act if it is reasonably possible to do so. [Citation omitted.]" *State v. Le*, 260 Kan. 845, 847-48, 926 P.2d 638 (1996).

The ultimate question presented in this tragic case is whether the KCCC, when read as a whole, demands an adjudication hearing by a trial court before returning the child to the natural parents when an interested party has filed a CINC petition. It is unnecessary to try and decipher the purpose behind the KCCC. Its purpose is clearly stated in K.S.A. 38-1521:

"It is the policy of this state to provide for the protection of children who have been subject to physical, mental or emotional abuse or neglect or sexual abuse by encouraging the reporting of suspected child abuse and neglect, insuring the thorough and prompt investigation of these reports and providing preventative and rehabilitative services when appropriate to abused or neglected children and their families so that, if possible, the families can remain together without further threat to the children."

The KCCC aims to protect children to such an extent that K.S.A. 38-1522(f) makes it a class B misdemeanor for many individuals in positions dealing with children to willingly and knowingly fail to report a suspected case of child abuse.

K.S.A. 38-1501 states that the provisions of the statute

"shall be liberally construed, to the end that each child within its provisions shall receive the care, custody, guidance, control and discipline, preferably in the child's own home, as will best serve the child's welfare and the best interests of the state. All proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state. Proceedings pursuant to this code shall be civil in nature."

Given this background, the KCCC provides specific details regarding the duties of those involved in potential CINC cases. K.S.A 38-1510 mandates that

"[i]t shall be the duty of the county or district attorney to prepare and file the petition alleging a child to be a child in need of care and to appear at the hearing on the petition and to present evidence that will aid the court in making an appropriate adjudication at the conclusion of the hearing."

Thus, K.S.A. 38-1510 contemplates not only that an adjudication hearing will be held, but that the district attorney actively participate in helping the court make a decision before or during the adjudication hearing. Under K.S.A 38-1556,

"[i]f the court finds that the child is not a child in need of care, the court shall enter an order dismissing the proceedings.

"If the court finds that the child is a child in need of care, the court shall enter an order adjudicating the child to be a child in need of care and may proceed to enter orders of disposition as authorized by this code."

When these sections of the KCCC are read together, it is obvious that by giving the district attorney the duty to present evidence regarding whether the child is in need of care, the statute makes

no sense unless the court holds an adjudication hearing. It is certainly reasonable that the provisions of the KCCC discussed earlier must be construed together with the aim of bringing them into workable harmony and fulfilling the purposes of the entire act. If the KCCC were read any other way, such that an adjudication hearing or stipulation is unnecessary, it would undermine the entire framework of the statute and prevent the State from carrying out one of the main purposes of the statute—to protect children who have been abused or who could potentially be abused.

In summary, the framework of the KCCC requires that before returning custody of the child to the parents, the trial court must first determine whether the child is indeed a child in need of care. The trial court ignored the statutory mandates of the KCCC when it returned custody of K.W. to the natural parents without first conducting a CINC adjudication hearing. Although the trial court has the authority under K.S.A. 38-1544(a) to enter an order for continuance and informal supervision without an adjudication if no interested party objects, the State lodged an objection to this procedure at the September 25 hearing. As a result, the trial court erred in not conducting an adjudication hearing.

Reversed.